(No. 10814.)

·BARBARA R. KLEIN, Appellee, *vs.* T. HENRY KLEIN *et al.*
Appellants.

*Opinion filed December 21, 1916—Rehearing denied Feb. 14, 1917.*

1. DOWER—*a proceeding to assign dower is in the nature of a proceeding in rem.* A proceeding against the heirs to assign dower is not one *in personam* but is in the nature of a proceeding *in rem,* although, when the lands are not susceptible of division and a jury has fixed the yearly value of the dower, the decree may run against the heirs and require them to pay yearly dower *pro rata,* according to their respective interests in the premises.

2. SAME—*when decree should not be against the heirs.* Where dower is allowed out of the net rents, issues and profits the decree should not be against the heirs or their representatives or assigns, but should be that the widow is entitled to receive, in her own right, one-third of the net rents, issues and profits as a tenant in common with the owners of the fee.

3. SAME—*effect where dower is assigned out of rents and profits.* Where dower is assigned out of rents and profits the widow is entitled to receive her one-third of all rents, issues and profits, but if there are no rents, issues or profits for any period then she is entitled to receive nothing while that condition continues.

4. SAME—*effect where jury ascertains yearly value of dower.* Where a jury is empaneled to fix the yearly value of dower, their estimate should not be based on the condition of the rents and profits at the time dower is assigned but should be based upon a consideration of the probable condition of the estate during the lifetime of the dowress, as the amount fixed by the jury remains unchanged, regardless of changes which may occur in the rents, issues and profits.

5. SAME—*when decree should not attempt to average rents and profits.* In a proceeding to assign dower, where neither party asks for a jury but the cause is referred to the master in chancery to ascertain the widow's damages, and the parties acquiesce in the payment by the heirs to the widow of one-third of the net rents of property under lease, the decree should not attempt to average the rents and decree payment of the average in lieu of dower, but should provide that the widow shall have one-third of the net rents, issues and profits as collected each year.

6. SAME—*decree should not require payment of one-third of the rents in advance.* Where the widow is allowed one-third of the

net rents, issues and profits as dower, the decree should not require the payments to her to be made quarterly in advance, as her interest terminates at her death, which might occur before the termination of the quarter for which she had received her portion of the rents, in which case she would have received money to which the reversioners were entitled.

7. SAME—*what is not proper practice in assigning dower in the homestead property.* In assigning dower to the widow in homestead property occupied by her, it is not proper practice to estimate the value of the premises, deduct $1000 for the homestead estate and allow five per cent on one-third of the remainder as dower, but in such case a jury should be empaneled to fix the yearly value of the dower interest.

8. SAME—*when allowance of a sum as damages for dower in homestead premises is error.* It is error to decree to the widow $250 per year as damages for her dower in homestead premises, which have been occupied by her and been in her possession, and which, so far as the evidence shows, were non-productive, as she is entitled, until dower is assigned, to the exclusive possession of the homestead premises and to their whole profits.

9. SAME—*on petition for assignment of dower petitioner is not entitled to solicitor's fees.* On petition for assignment of homestead and dower the petitioner is not entitled to have her solicitor's fees taxed as part of the costs, as the provision of the act of 1869 allowing such course was repealed by implication by the revision of the Partition act in 1874. (*Gehrke* v. *Gehrke,* 190 Ill. 166, followed.)

APPEAL from the Circuit Court of Cook county; the Hon. JAMES S. BAUME, Judge, presiding.

EDWARD J. KELLEY, and JOSEPH H. MUHLKE, for appellants.

CHARLES L. WOOD, and E. F. MASTERSON, for appellee.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

On February 28, 1914, Henry P. Klein departed this life in the city of Chicago, intestate, leaving him surviving appellee, Barbara R. Klein, his widow, and appellants,

T. Henry Klein, Joseph H. P. Klein, Andrew Fred B. Klein and Agnes Klein, (also known as Sister Marie Aileen,) as his heirs-at-law. He died seized and possessed of three tracts of land in the city of Chicago, which for convenience will be designated as the Halsted street, the Clark street and the Belmont avenue properties. He resided on the Belmont avenue premises at the time of his death. On March 5, 1914, the widow served a written demand on the heirs-at-law to set off her dower and homestead in the property. Appellants neglected to comply with such notice, and on October 10, 1914, she filed her petition in the circuit court of Cook county praying that dower and homestead be assigned to her in the premises in the manner and according to the provisions of the statute in such case made and provided or that an allowance of a lump sum be made to her in lieu of dower. Appellants answered, admitting appellee was entitled to dower and homestead and that the same had not been assigned to her, but denying any claim or demand had been served upon them to assign or set off such dower and homestead. Replications were filed to the answer, and the cause was referred to a master in chancery to take the proofs and report the same, together with his conclusions as to the law and facts. The master made his report finding appellee was entitled to dower in each of the tracts of land in controversy and to a homestead in the Belmont avenue property, but that she was not entitled to be allowed and have taxed as a part of the costs in the case her reasonable solicitor's fees incurred in the proceedings, and recommended that a decree be entered substantially as prayed in the petition. Each party filed exceptions to the master's report, which were overruled on the hearing, and a decree was entered allowing appellee dower in each of the three pieces of property and a homestead in the Belmont avenue property but disallowing her claim for solicitor's fees. Both parties prayed and were allowed appeals from the decree. Appellants alone have perfected their appeal to this court.

Appellants have assigned as error that the court erred (1) in averaging the rents for a period of years and allowing dower to the complainant based upon such average; (2) in decreeing a homestead to complainant when, in fact, she had her homestead without interruption and hindrance from appellants; and (3) in allowing damages for dower in the homestead property for a period of time when the same was in the exclusive control of the petitioner. Appellee has assigned as cross-error the refusal to tax reasonable solicitor's fees as a part of the costs of the proceeding.

It appears from the pleadings and proofs, in addition to the facts hereinbefore stated, that appellee was married to Henry P. Klein and that he was seized and possessed of the property above mentioned during coverture; that she is entitled to dower in the same, and that she had served a proper demand for assignment of dower on the heirs and that dower had not been assigned to her; that the Halsted street property is under lease for a period of ninety-nine years from July 1, 1911, at an annual rental of $2750 for the first five years and of $3000 for the balance of the term, the lessees covenanting to pay all taxes and assessments of every kind and nature imposed upon it during the term of the lease, the rent to be paid in advance, in equal quarterly installments on the first days of January, April, July and October in each year; that the Clark street property is under lease from June 1, 1913, to May 31, 1923, at a rental of $250 per month to and including May, 1918, and of $325 per month during the remainder of the term, payable in installments on the first day of each month; that the Belmont avenue property is not under lease but was occupied by the deceased and appellee as a homestead, and appellee has since remained in the possession and occupancy thereof, its fair cash value being stipulated to be $16,000. It was further stipulated upon the hearing that the property in controversy was not susceptible of partition or division without material injury to the parties in interest; that

the appointment of commissioners to set apart the widow's dower was waived, and that the heirs were willing to pay the widow one-third of the net rents as collected on the Halsted and Clark street properties and allow her to remain on the homestead property, and that when the final decree be entered it should be upon the basis of a valuation of $96,000 for the three pieces of property.

The decree finds, among other things, that the Belmont avenue property faces 112 feet on Belmont avenue with a depth of 165 feet to an alley, on a part of which property are situated a frame dwelling house and a barn; that the present cash value of appellee's homestead interest in the premises is $1000, and her dower interest, after deducting her homestead, is $250 per year; that the amount of rents derived from the Halsted street property up to June 30, 1916, was $2750 per year and for the succeeding ninety-four years will be $3000 per year, payable quarterly in advance, on the first days of January, April, July and October of each year; that appellee is entitled to receive one-third of such rents so collected as her dower, payable on the fifth days of January, April, July and October of each year; that the gross rental of the Clark street property is $250 per month to and including the month of May, 1918, and $325 per month thereafter, payable monthly; that the average present monthly value of the premises is $287.50; that the rents accruing under the leases on the Halsted and Clark street properties have been collected by the heirs; that the net amount of such rents collected up to June 30, 1915, is $6385.44, and that the heirs have paid to the widow one-third of that amount, or $2128.48, which payment is approved by the court; that there is due the widow from the heirs the sum of $916.66 as her share of the net rental of the Halsted street property to and including June 30, 1916, and $833.33, less one-third of the taxes for the year 1915, on the Clark street property to and including March 31, 1916; that her dower interest in the Belmont avenue

property at the rate of $250 per year for two years, commencing March 5, 1914, and ending March 5, 1916, is the sum of $500, less one-third of the general taxes on the same for the year 1915, and payment of the several sums as above found due is decreed. The decree further finds that appellee is entitled to be paid, in lieu of her dower in the Halsted street property, the sum of $916.66 for the term ending June 30, 1916, and $1000 per annum thereafter during her life, in quarterly installments on the fifth days of April, July, October and January of each year thereafter; that the average gross annual rental of the Clark street property is $3450, and that appellee is entitled to one-third thereof, less one-third of the general taxes, based upon the assessed value of such property for the year 1915, which sum should be paid to her annually on the sixth day of March of each year during life; that she is entitled to dower in the Belmont avenue property in the sum of $250 per year, to be paid on March 6 of each year during her survival, after deducting therefrom a sum equal to one-third of the general taxes as fixed by the assessed value of the same for the year 1916, and that she is entitled to a homestead estate in the same to the value of $1000 and a right to occupy the dwelling house and ground upon which the same is situated until her homestead estate in the premises is extinguished; that she shall not be chargeable with or liable for the payment of any part of any special assessment or taxes levied for local improvements which benefit or increase the cash market value of such lands. The decree orders the payment of the above sums of money in lieu of dower and makes the same a first lien on the property, and that in the event of a failure of the heirs or their representatives and assigns, or the owners of the fee, to pay the several amounts ordered to be paid at the times therein designated, the master in chancery shall proceed to sell the respective tracts of land against which the sums remain unpaid in accordance with

the statute, and that the court shall retain jurisdiction for the purpose of enforcing compliance with the decree, and that appellants shall pay the cost of the proceedings, share and share alike, and that execution issue therefor.

It is first urged that the decree is a joint decree against the several heirs and is erroneous for the reason that it might compel one who had paid or stood ready and willing to pay his portion of the dower, to suffer his land to be sold because of the neglect or refusal of some of the other tenants in common to pay their just portion of the dower under the decree. A proceeding of this character is not one *in personam* against the heirs-at-law but is in the nature of a proceeding *in rem* against the real estate to secure an assignment to the widow of that portion of the real estate in which she is entitled to dower. It is the real estate, and not the heir, that is holden for the payment of the dower, except in cases in which the lands are not susceptible of division or partition without manifest injury to the whole and a jury has been empaneled to assess and fix the yearly value of the dower under the statute, in which case the decree may run against the heirs, and they should be required to pay such yearly dower *pro rata,* according to their respective interests in the premises, (*Peyton* v. *Jeffries,* 50 Ill. 143,) and its payment should be made a lien upon the respective tracts of real estate on which it is charged. In this case it is stipulated that the property could not be divided without damaging the whole, and in such case it is provided by section 39 of the Dower act (Hurd's Stat. 1916, p. 988,) that "dower may be assigned of the rents, issues and profits thereof, to be had and received by the person entitled thereto as tenant in common with the owners of the estate, or a jury may be empaneled to inquire of the yearly value of the dower therein, who shall assess the same accordingly, and the court shall thereupon enter a decree that there be paid to such person as an allowance in lieu of dower, on a day therein named, the sum so assessed as the

yearly value of such dower, and the like sum on the same day of each year thereafter during his or her natural life, and may make the same a lien on any real estate of the party against whom such decree is rendered, or cause the same to be otherwise secured."

Two methods of procedure are provided by the above section for the ascertainment and setting off to the widow of her dower interest in the premises. The first and by far the simplest and most satisfactory method is that of assigning to the widow one-third of the net rents, issues and profits of the land as they accrue, which she is to receive as a tenant in common with the owners of the estate. The other method is by empaneling a jury and ascertaining at the outset the yearly value of her dower interest in the premises and then directing the payment of such sum to her each year during her natural life in lieu of dower. When the first method is pursued the amount allowed is not necessarily a fixed sum but is one which may vary from year to year with the rents, issues and profits actually received from the land. Where the premises are under lease for a fixed term she would be entitled to receive her one-third part of such net rents, and if the land is not under lease and there are no rents, issues or profits arising therefrom she will receive nothing while that condition continues. When the second method is adopted the amount is fixed by the jury and remains so, irrespective of any changes which may occur in the rents, issues and profits derived from the lands. In such case the yearly value as estimated by the jury should not be based on the condition of the rents and profits at the time dower is assigned, but should be based upon a consideration of the probable condition of such estate during the lifetime of the dowress, and if it appears that the rents and profits are likely to be diminished or entirely swept away at some future time, such fact should receive due consideration and weight in determining the yearly value of such allowance to be made in lieu of

dower. When the dower is allowed out of the net rents, issues and profits of the lands the decree should not be against the heirs or their representatives or assigns for the payment of the same, but should be that the widow is entitled to receive in her own right one-third of the net rents, issues and profits arising from such premises as a tenant in common with the owners of the fee. (*Heisen* v. *Heisen,* 145 Ill. 658.) When the allowance is made by the second method the decree may be made to run against the heirs and their assigns and representatives, and the payment of the same also made a lien upon the real estate upon which the same is charged. In the case at bar neither method seems to have been pursued. No request was made by either party for a jury to ascertain the yearly value of the widow's dower interest in the premises. On the contrary, the cause was referred to the master in chancery to ascertain what, if any, damages the widow had sustained and report his findings of such facts, with his conclusions, to the court. On the hearing before the master the heirs paid, and the widow received in lieu of her dower up to the time of such hearing, and without protest, one-third of the net rents arising out of the leases then on the premises, but she insisted also upon being paid her damages for dower in the Belmont avenue property, which was not under lease, and, so far as the evidence shows, was non-productive. This, under the circumstances, must be held an assent upon the part of the parties that the widow should receive in lieu of her dower an allowance equal to one-third of the net rents, issues and profits arising from such premises as were then under lease. The court should therefore have decreed that she was entitled, as her dower, to one-third of the net rents, issues and profits arising out of such premises as the same accrued and were collected each year, and should not have attempted to average the same and decree the payment to her of such average in lieu of her dower.

It is further urged that the court erred in decreeing that appellee be paid her dower in the Halsted street property quarterly as collected under the lease, for the reason that as the rent is payable in advance by the provisions of such lease, she might thereby be paid more than she would be entitled to in the event of her death immediately following the collection of such rent and the payment of her portion thereof. An estate for life in land, such as the dower interest of appellee in this case, terminates on the instant of the death of the life tenant, and the reversioners are then entitled to the possession and the entire rents from such land. A life tenant cannot lawfully collect rent from an under-tenant in advance, as against the reversioners, for a period that might extend beyond the life term. Appellants are the reversioners in this case and the suit is between such reversioners and appellee. They should not be compelled to pay appellee rent that may never belong to her.

It is next urged that the court erred in allowing appellee dower in the Belmont avenue property to the amount of $250 per year, subject to the payment of one-third of the general taxes as fixed by the assessment of 1915, and in allowing her as damages for the failure to assign such dower at the rate of $250 per year, commencing on March 5, 1914, and ending on March 5, 1916. This allowance was not based upon any evidence as to the probable yearly value of such dower interest but was arrived at by deducting from the stipulated value of the property, which was $16,000, the homestead estate therein of the widow of the value of $1000, leaving a balance of $15,000, and taking five per cent of one-third of such value, or $250, as the value of such dower interest. As above pointed out, two methods for assigning dower are provided by section 39 of the Dower act where the premises in which dower is to be assigned are not susceptible of division. The first is by assigning to the widow one-third of the rents, issues and profits thereof, and the other is by empaneling a jury to in-

276 — 34

quire into the yearly value of such dower and fix the same. This sum is not to be arrived at by ascertaining the fair cash market value of the whole tract of land and allowing the widow a sum each year equivalent to five per cent on one-third of such value, but is to be fixed by estimating the probable yearly value of the use of such land in view of the probable condition of such estate during the lifetime of the widow, which might or might not be more or less than five per cent of one-third of the total value of such property. The proper practice in such a case as this is for the court to empanel a jury to assess the yearly value of the property and then direct the payment of such sum of money as dower during each year of the widow's life.

As to the allowance of damages at the rate of $250 per year for the years 1914 and 1915, in which the property was not under lease, was non-productive so far as the evidence shows and was in the possession of appellee, we think this also was erroneous. Until her dower was assigned appellee was entitled to exclusive possession of the whole of these premises and to use or lease the same and apply the whole profits thereof to her exclusive use. (*Lambert* v. *Hemler,* 244 Ill. 254.) In this case she has had since the death of her husband the use and has been in possession and occupancy of said property. Even if she had not occupied the premises or if they were of such a character that nothing could be realized from them, it would be inequitable to allow her anything as damages in lieu of dower in such premises, when, in fact, nothing has been realized from them.

The homestead right of appellee under the statute is the right to occupy so much of the premises as would be worth $1000 while she lives. Appellants, the owners of the reversion, concede this right and even concede that she may occupy the entire Belmont avenue property, on which the homestead was situated. If this were a proceeding for partition by those who are the owners of the fee subject to

the dower and homestead rights of the appellee, and the premises were not susceptible of division and assignment of dower, by metes and bounds, in the land without manifest injury and for that reason must be sold, and if a homestead of the value of $1000 could not be set off by metes and bounds and the parties consented thereto, the value of the dower and homestead could be ascertained and paid in a lump sum or a sum equal to the value of the homestead, and also dower in the remainder could be set aside and the appellee paid the income thereon during life, but on the petition filed by appellee the court, under the statute, could only set off to her so much of the premises as would be worth $1000, which she would have the right to occupy as her homestead during the remainder of her life. Under the stipulation of appellants, the premises described as the Belmont avenue property, on which was situated the dwelling house, may be set off for the occupancy of the widow as her homestead, or she can waive her homestead in the tract if she prefers not to occupy it under the circumstances and have dower assigned in that property by one of the methods above pointed out.

As to the cross-error assigned by appellee because of the refusal of the court to tax reasonable solicitor's fees as a part of the costs in the case, in *Wilson* v. *Clayburgh,* 215 Ill. 506, we pointed out that, as a general rule, nothing can be allowed and taxed as costs by the clerk or the court except such items as are designated as costs by the statute. Appellee cites as authority for the allowance of such fees as costs sections 39 and 40 of the present Partition act and section 1 of the Partition act of 1869, which latter act provided as follows: "That in proceedings in any of the courts of this State for the partition of real estate or for the assignment of dower, or for either, it shall be lawful for the court to order that a reasonable fee be allowed the solicitor or solicitors prosecuting, to be determined by the court, which shall be taxed as costs and divided *pro rata* between

the parties to the proceeding according to their respective interests." (Laws of 1869, p. 368.) While this statute does not appear to have been expressly repealed by any act of the legislature, the entire act in relation to dower, as well as that in relation to partition, was revised and re-enacted in 1874 and the provision for the allowance of solicitor's fees in proceedings for the assignment of dower was omitted from such revision of the act. The effect of the complete revision of the act of 1874 was to work an implied repeal of the prior law, the new act superseding and taking the place of the old act. (*State Board of Health* v. *Ross,* 191 Ill. 87.) In *Gehrke* v. *Gehrke,* 190 Ill. 166, in speaking of the omission of this provision from the revision of the Partition act of 1874, we said: "This omission evidently indicates that the legislature did not intend to allow the taxation of a solicitor's fee as a part of the costs in proceedings for the assignment of dower." In that case we further held that solicitor's fees were not properly taxed, under sections 39 and 40 of the Partition act, as a part of the costs in the case, even in a partition proceeding, where the original proceeding was one commenced for the assignment of dower and partition was asked and obtained on a cross-bill filed by the heirs in such proceeding. That case is conclusive of this contention, and there was no error in refusing to allow and tax solicitor's fees as a part of the costs.

For the reasons given, the decree must be reversed and the cause remanded to the circuit court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*