Robert M. Schrayer et al., Appellees, v. P. F. McCarthy et al., on appeal of Henry Kadin, Executor under the Last Will and Testament of Ida Schrayer, Deceased, Sophie Kadin et al., Appellants.

## Gen. No. 28,765.

DOWER—*basis for assignment to estate of dowress.* Where a suit for the assignment of dower proceeded to the point where the land had been sold, the widow joining in the conveyance and it was stipulated before the master that the widow would be entitled to $65.165 out of every $100 subject to dower if 5 per cent should be determined as the proper basis, and other sums if 4 per cent or 6 per cent should be decided to be correct, and the master's report was made recommending the 5 per cent basis, to which report no objection was made except by the widow to the amount allowed as solicitors' fees but before her exceptions were disposed of she died, the allowance to her estate should be on the basis of the stipulation instead of merely the yearly value of her dower interest up to the time of her death.

THOMSON, J., dissenting.

Appeal by defendants from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1923. Reversed and remanded with directions. Opinion filed October 30, 1924. *Certiorari* denied by Supreme Court (making opinion final).

RYAN, CONDON & LIVINGSTON, for appellants; IRVIN I. LIVINGSTON and DAVID J. GREENBERG, of counsel.

LEESMAN & ROEMER, for appellees; ABRAHAM L. WEBER, of counsel.

MR. JUSTICE TAYLOR delivered the opinion of the court.

Ida Schrayer, a widow, having died during the pendency of this suit—which was begun by her husband's heirs for the assignment of her dower in and partition of certain real estate, and which suit had proceeded so far that the property had been sold with

her consent, a deed given to the purchaser, the purchase money paid over to the master, and an order entered approving the master's report of sale and receipt of the proceeds—the question arises whether her estate is entitled to such a portion of the proceeds of the sale as is substantially the equivalent of what would have been paid to her if she had lived until final distribution had actually been made. The chancellor decreed that her estate was entitled only to the sum of $58.57 as the yearly value of her dower interest for the time she lived after her husband's death. From that decree this appeal was taken.

The original bill was filed on March 10, 1919, by the heirs of Siegfried Schrayer, deceased, and was for the assignment of dower and partition of certain real estate. He died on October 11, 1918. His widow, Ida Schrayer, an original defendant, filed certain demurrers, and subsequently, upon stipulation, an amended bill of complaint was filed. The defendant, Ida Schrayer, filed an answer thereto. At a hearing, the chancellor found that the real estate was not susceptible of division and ordered it sold by the master, the widow being present at the sale and verbally consenting that it be sold free and clear of dower. Later, the widow and the complainants executed and delivered quitclaim deeds to the purchaser, conveying to him all their interest in said real estate. On April 1, 1920, the master filed a report of sale, and it was approved by the court, and an order entered confirming the sale. On July 17, 1920, an order was entered referring the cause to the master to take evidence as to solicitors' fees and as to certain rents, and ordering the master to report the evidence and his conclusions, together with a report of distribution. Pursuant to the rereference, the master on November 4, 1920, filed his report, which contained the following: ''That there was on hand for distribution the sum of $13,655.44, and of that sum Ida Schrayer is

entitled to one-half as an heir and has a dower interest in the other half; computing the dower on the basis of 5 per cent, which I recommend. Ida Schrayer's dower interest is $65.165 on every $100, subject to dower. One-half of $13,655.44 is $6,827.72. The dower interest in the other half amounts to $1,483.12, a total due Ida Schrayer of $8,627.20.'' It was stipulated before the master that out of every $100 of the funds subject to dower the widow would be entitled to $59.008 if computed at 4 per cent; $65.165 if at 5 per cent; and $69.175 if at 6 per cent.

In the report of November 4, 1920, the master recommended that out of the total receipts of $15,150.10, the sum of $1,494.66 be paid as court costs and solicitors' fees, leaving a balance of $13,655.44; that out of that sum $8,152.64 should be paid to the widow as the equivalent of her inheritance of one-half of the property and her dower interest in the other half; and that the balance, $5,502.80 should be divided equally among the five brothers and sisters of the deceased, Siegfried Schrayer. No objections were filed to that report, save by the widow, who objected to the allowance of $1,280 as solicitors' fees. The master overruled the objections and on November 4, 1920, the chancellor ordered them to stand as exceptions. On November 25, 1920, before those exceptions had been disposed of, the widow died. On March 7, 1921, the complainants, the five brothers and sisters of Siegfried Schrayer, deceased, having obtained leave of court, filed a supplemental bill, setting up the death of the widow, and that she died testate leaving all her property to her four sisters, and making them and the executor of Ida Schrayer's estate parties defendant. It further set forth the history of the prior proceedings; and alleged that the dower interest of the widow had terminated, and that her estate was only entitled to the yearly value of her dower from the death of her husband until her death, and praying that the

balance be distributed among the complainants. The executor and the four sisters of the widow filed an answer in which it was alleged that the dower interest of the widow had already been fixed and that the court had lost jurisdiction save in so far as it was necessary to hear and determine the exceptions to such parts of the master's report of distribution as related to solicitors' fees.

On March 15, 1922, the chancellor re-referred the cause to the master on the issues precipitated by the supplemental bill, answers and replications. Evidence was taken and the general history of the proceedings in court and at the sale were stipulated, and on May 17, 1922, the master filed his report. In that report he found as a matter of law that, at the time of the death of the widow, her interest in the real estate had not been assigned, and that her estate was only entitled to $58.57, being for the yearly value of her dower interest from the time of the death of her husband to the time of her death. The dower interest allowed in his former report was $1,494.66.

To the master's report of May 17, 1922, the defendants filed objections, claiming that after the sale of the property, and as a result of the conduct of the parties and the orders of the court, the widow was, in her lifetime, entitled to receive the value of her dower in a lump sum of money out of the proceeds in the hands of the court. Those objections were overruled, and, afterwards, ordered to stand as exceptions.

On June 22, 1923, the chancellor entered a final decree. It was based on a consideration of the exceptions to the master's reports of November 4, 1920, and May 17, 1922. It sustained the exceptions as to solicitors' fees, and overruled those in regard to the amount for dower in the report of May 17, 1922. It decreed that the dower interest was $58.57, and not $1,483.12; that the widow's estate was only entitled to

the yearly value of her dower interest during the time she lived after her husband's death.

It is the contention of the defendants that the consent of the widow to a sale of her dower interest, the actual sale of her interest pursuant to such consent, her joining in the quitclaim deed to the purchaser, the stipulation of the parties as to the proportion of the funds to which she would be entitled, i. e., the amount per $100, and the master's report of November 4, 1920, finding the sum in gross to which she was entitled for her dower to which no objections were filed, all taken together entitled her to a lump sum in lieu of dower, and that upon her death it passed by her will to her executor for the benefit of her legatees. Inasmuch, however, as the partition and dower proceedings did not ripen into a final order until after her death, the only question that we are justified in considering is whether the conduct of the parties brought about a status which gave rise to such rights on her part that it would be illegal to consider her dower interests as terminated by her death. What the master did by way of recommendation and report was merely advisory; it did not constitute an order of court. In a court of chancery judicial orders and decrees are made only by the chancellor himself. But, was there an agreement *in pais?* If, in the course of the hearing before the master, the parties made a stipulation, in other words, an agreement which sanctioned the widow's right to a gross sum to be taken from the proceeds of sale, a court of equity would enforce it. *Sill v. Sill,* 185 Ill. 594; *Kepcha v. Lowman,* 249 Ill. 118.

By the order of reference of July 17, 1920, which was made after the sale and its approval, the master was "to take evidence in the matter of the allowance of a solicitor's fee for complainants herein, in the matter of setting apart the dower interest of defendant, Ida Schrayer, and also in the matter of an ac-

counting of the rents collected'' by her. At a hearing under that reference, a stipulation was made, for all the parties, ''that out of every $100 of the portion of these funds, subject to dower, the defendant, Ida Schrayer, is entitled to receive the sum of $59.008 if the rate of 4 per cent is deducted; $65.165 if the rate of interest of 5 per cent is deducted; $69.75 if the rate of 6 per cent is deducted.''

Pursuant to the order of reference and that stipulation, the master computed the widow's dower at 5 per cent, that is $65.165 on each $100 subject to dower, and recommended that the widow's dower be fixed at $1,483.12, and allowed in that sum. No order confirming that recommendation having been made by the chancellor, was it, nevertheless, binding? The complainants ''stipulated and agreed,'' in so many words, that ''the defendant, Ida Schrayer, is entitled to receive the sum of $65.165 if the rate of interest of 5 per cent is deducted.'' The only thing the agreement left for the master to do was to determine whether he would make the computation at 4, 5 or 6 per cent. We may assume, with reason, that counsel for the widow in their future conduct of the proceedings relied upon that agreement. Without that agreement they might have made no objection to any part of the master's findings, and have had a decree entered before the death of the widow. No case has been cited that is an exact parallel, and that is not surprising as such facts are always apt to be unique. Further, the fact that the complainants did not object to the master's finding of $1,483.12 as a lump sum for her dower interest is some corroboration of the claim that the stipulation and agreement was recognized by them as binding. It follows, therefore, that as the parties had agreed that the widow was entitled to receive a lump sum for her dower interest, and proceeded on that basis, it was error to ignore that agreement and only allow dower based on the time that elapsed between the two deaths. *Klein v. Klein*, 276 Ill. 520.

The decree will be reversed and the cause remanded with directions to enter a decree in accordance with this opinion.

*Reversed and remanded with directions.*

O'CONNOR, P. J., concurs.

MR. JUSTICE THOMSON, dissenting: I am unable to concur in the foregoing decision of this case. In my opinion, the stipulation between the parties may not be given the effect of a binding agreement, under which the widow was obliged to take, or her husband's heirs were obliged to pay to her, a lump sum, as and for her dower. By this stipulation, the parties merely agreed that "if the rate of 4 per cent is deducted," the widow "is entitled to receive the sum of $59.008," out of each $100 of the portion of the funds subject to dower; "$65.165, if the rate of interest of 5 per cent is deducted; $69.75, if the rate of 6 per cent is deducted." This stipulation merely agrees upon the basis of computing the lump sum the widow is entitled to receive, as and for her dower. Even appellants do not contend that this stipulation, in and of itself, constituted a binding agreement, under which the widow agreed to take, and her husband's heirs agreed that she be paid, a lump sum. Their contention is rather that when this stipulation is taken in connection with the fact that the widow had consented to a sale of the real estate free of dower, and the property had been sold and converted into money, and she had thereby become entitled, in the alternative, either to a life income from a proper portion of the funds or to a lump sum of money, and that the parties thereupon made this stipulation, following which the master made a report recommending that the widow be paid a lump sum of $1,483.12, as and for her dower, and the further fact that neither the widow nor her husband's heirs made any objection or took any exception to that recommendation, it should be held that the parties are shown by this course of con-

duct to have made such a binding agreement as to the alimony that they should not now be allowed to change their position.

In my opinion, neither the stipulation itself nor when taken in connection with the other facts referred to can be given the effect contended for. The most that can be said for the stipulation and the course of conduct adopted by the parties, as indicated by the other facts on which appellants rely, is that it indicates a willingness on the part of the widow to accept, and, on the part of the other heirs of her husband, that she be paid a lump sum rather than an income for life from a proper portion of the proceeds of the sale of the real estate. It may well be that the failure of the widow to file objections to the master's report, in so far as it awarded her a lump sum, as and for her alimony, would preclude her from taking a contrary position on appeal as against her husband's other heirs, and the same would apply to them as against her. That is as far as *Gehrke v. Gehrke,* 190 Ill. 166, and *Cheltenham Imp. Co. v. Whitehead,* 128 Ill. 279, on which appellants rely, go. But that does not determine the issue presented here.

Appellants further rely upon *People v. Spring Lake Drainage & Levee Dist.,* 253 Ill. 179, and *Klein v. Klein,* 276 Ill. 520. In my opinion, neither of these cases is in point. In the former case, the parties to pending litigation made a comprehensive stipulation involving the termination of the litigation, which was specific in its terms and clearly binding upon all the parties to it, even without the formal entering of a decree dismissing the litigation, as was contemplated by the stipulation. That case did not involve the question of dower. The *Klein* case did; but in that case the heirs actually paid and the widow received in lieu of her dower, up to the time of the hearing of the case, one-third of the net rents arising out of certain leases, and the court held that under all the facts present in

that case, this should be held an assent upon the part of the parties, that the widow should receive in lieu of her dower an allowance equal to one-third of the net rents and profits arising from the premises, and that the trial court should have fixed the amount to be paid the widow, in the future, as dower, on that basis, by reason of the agreement thus shown to have existed between the parties. There the widow and the heirs were all living and the situation presented to the court was not at all that involved in the case at bar.

As before stated, in my opinion, all that can be said in view of the stipulation here presented and all that had occurred up to the time of the death of the widow is that she had indicated a willingness to take a lump sum. In that situation, I am further of the opinion that the widow having died, her heirs are not entitled to receive the money involved in this dower. Under the circumstances of the situation involved in this case, the heirs of the widow would not be entitled to this money, unless, prior to her death, the widow had acquired a vested interest in it, and unless the right to be paid the sum determined upon had vested in her. Nothing having been shown to have occurred beyond an indication of the widow's willingness to receive such a sum, clearly, in my opinion, her right to the money would not vest in her until the court had entered its decree. That the court did not do, and the widow died pending action by the court on the master's report. The cases relied upon by appellants in support of their contention, which cases are to the effect that the executors of the estate of a deceased widow may sue for and recover a lum sum, to which the widow has become entitled by sale of her dower interest, even though she dies prior to the entering of a decree confirming her right, such as *Mulford v. Hiers*, 13 N. J. Eq. 13, and *McLaughlin v. McLaughlin*, 22 N. J. Eq. 505, are, in my opinion, not applicable

here. Both of those cases are based upon a statute in force in that State, the effect of which the court there holds to be that if the widow consents to accept a gross sum in lieu of her estate and dower, "the right of the widow to receive such equivalent becomes vested, upon her filing her consent to accept it. She is bound by her consent to such acceptance and it is just that the obligation should be mutual. The right vested in the widow to receive a sum in gross for her estate cannot be divested by her death." In my opinion no such effect may be given to the provisions of the statute of this State on this subject.

There being nothing in the record in the case at bar, in my opinion, indicating more than a willingness on the part of the widow to accept a lump sum, as and for her alimony, out of that proportion of the sale of the real estate subject to dower, the widow never acquired any such right to such sum as would pass to her heirs upon her death. I am therefore of the opinion that the decree appealed from should be affirmed.